**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

BRIAN J. MCKEEN, MCKEEN
& ASSOCIATES, P.C.,

        Case No. 2:10-cv-10624

      Plaintiffs/Counter-Defendants,        Hon. Lawrence P. Zatkoff

and

TRACEY LYNN UTTERBACK

      Plaintiff,

v.

CONTINENTAL CASUALTY
COMPANY,

      Defendant/Counter-Claimant,

_____/

**OPINION AND ORDER**

AT A SESSION of said Court, held in the United States Courthouse,
in the City of Port Huron, State of Michigan, on August 30, 2011.

PRESENT:  THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

**I. INTRODUCTION**

This matter is before the Court on Plaintiffs/Counter-Defendants' motion for summary

judgment [dkt 14]; and Defendant/Counter-Claimant's motions for judicial notice [dkt 13] and for

summary judgment [dkt 15].[1]  No response was filed with respect to the motion for judicial notice,

_____

[1] Plaintiff neither sought concurrence with Plaintiffs/Counter-Defendants' motion nor filed
responses to Defendant/Counter-Claimant's motions.

however, the motions for summary judgment are fully briefed.  The Court finds that the facts and legal arguments are adequately presented in the parties' papers such that the decision process would not be significantly aided by oral argument.  Therefore, pursuant to E.D. Mich. L.R. 7.1(f)(2), it is hereby ORDERED that the motions be resolved on the briefs submitted.  The Court addresses each motion below.

## II. BACKGROUND

Plaintiffs Brian McKeen and McKeen & Associates, P.C. (collectively "McKeen"), and Tracey Lynn Utterback ("Utterback") bring this action for failure of Continental Casualty Company ("Defendant") to indemnify McKeen under a  professional liability insurance policy ("Policy"), which allegedly covers a legal malpractice action (the "Utterback Action")[2] against McKeen.  The Utterback Action is currently stayed in a Jackson County Circuit Court.  Utterback filed the action against McKeen, alleging that McKeen committed legal malpractice while representing Utterback in a medical malpractice action ("Med-Mal Action").[3]

### A.  THE MED-MAL ACTION

On March 4, 2003, McKeen, as Utterback's counsel, filed a complaint against W.A. Foote Memorial Hospital for the wrongful death of Utterback's husband, Robert Drake (Utterback was formerly Tracey Lynn Drake). On November 5, 2005, a defendant in the Med-Mal Action filed a motion to compel the depositions of Utterback's expert witnesses.  The state trial court ordered McKeen to identify the expert witnesses that would be called at trial by November 30, 2005, and appear on December 2, 2005, before the court, prepared to schedule, or already have scheduled, the

---

[2]*Tracey Lynn Utterback v. Brian J. McKeen, et al.*, No. 09-03275-NM (Mich. Cir. Ct.).

[3]*Drake v. Schantz-Rontal*, No. 03-01785 (Mich. Cir. Ct.).

2

depositions of the expert witnesses. On December 2, 2005, the state trial court believed that McKeen was non-compliant with the order and gave McKeen until 5:00 p.m. on that day to submit a list of the expert witnesses.

On December 16, 2005, the state trial court determined that McKeen had violated the discovery orders. On January 3, 2006, the state trial court dismissed the Med-Mal action as a sanction for the failure to comply with its orders. McKeen filed a motion for reconsideration, which was denied on May 2, 2006. McKeen then appealed the dismissal; however, the Michigan Court of Appeals upheld the dismissal on November 17, 2007. In February of 2008, McKeen filed an application for leave to appeal with the Michigan Supreme Court, which was dismissed on July 25, 2008. A subsequent motion for reconsideration of the Michigan Supreme Court's denial of McKeen's application for leave to appeal was denied on October 27, 2008. On November 11, 2008, McKeen advised Utterback that all appellate remedies were exhausted and that McKeen was closing their office file on the Med-Mal Action.

## B. THE UTTERBACK ACTION

On June 8, 2009, McKeen received a letter from the legal counsel for Utterback, indicating that the legal counsel was investigating a potential legal malpractice claim against McKeen for their representation of Utterback in the Med-Mal Action. McKeen reported the possibility of a legal malpractice claim to Defendant on July 31, 2009. On October 13, 2009, Utterback filed the Utterback Action, alleging that McKeen committed legal malpractice while representing her in the Med-Mal Action, and seeking an unspecified amount of damages, interest, costs and attorneys' fees. In a letter dated October 15, 2009, Defendant denied coverage, stating that pursuant to the Policy, McKeen had a basis to believe that such a claim would arise before Defendant issued its first policy

to McKeen.

## C. THE POLICY

Defendant issued its first professional liability policy to McKeen on April 2, 2008. That policy was renewed by a second professional liability policy issued to McKeen, which is denoted in this Opinion and Order as the Policy. The Policy covers the period from April 2, 2009, to April 2, 2010. The langauge in the Policy is at issue in this case because the claim for coverage ocurred on July 31, 2009, during the time period the Policy was in effect. The Policy provides in relevant part:

> The Company agrees to pay on behalf of the Insured all sums in excess of the deductible that the Insured shall become legally obligated to pay as damages and claim expenses because of a claim that is both first made against the Insured and reported in writing to the Company during the policy period by reason of an act or omission in the performance of legal services by the Insured or by any person for whom the Insured is legally liable . . . .

Compl. Ex. 1, at § I.A. The Policy also includes a provision that excludes claims during the policy period that the insured was aware of before Defendant issues its policy to the insured ("Prior-Knowledge provision"):

> 3. prior to the date an Insured first becomes an Insured under this Policy or became an Insured under the first policy issued by the Company . . . whichever is earlier, of which this Policy is a renewal or replacement, *no such Insured had a basis to believe that any such act or omission, or related act or omission, might reasonably be expected to be the basis of such claim*[.]

Compl. Ex. 1, at § I.A.3. (emphasis added).

With respect to the terms defined in the Policy, "claim" is defined as "a demand, including the service of suit . . . received by the Insured for money or services arising out of an act or omission, including personal injury, in the rendering of or failure to render legal services." Compl.

4

Ex. 1, at § III.  "Related act or omission" is defined to mean "all acts or omissions in the rendering of legal services that are temporally, logically or causally connected by any common fact, circumstance, situation, transaction, event, advice or decision."  *Id.*  Neither party disputes that the Policy includes Plaintiff Brian McKeen and McKeen & Associates, P.C. as Insureds within the meaning of the Policy.

**D.  PROCEDURAL BACKGROUND**

Defendant removed this case from the Wayne County Circuit Court on February 12, 2010, on the basis of diversity jurisdiction.  McKeen asserts three counts against Defendant: (Count I) breach of the Policy; (Count II) bad faith denial of coverage under the policy; and (Count III) a declaratory judgment determining the coverage under the Policy.  As a component of McKeen's Complaint, they also seek 12% penalty interest under Mich. Comp. Laws § 500.2006.

In response, Defendant asserts that the Policy does not cover the Utterback Action because the conditions of the Policy have not been met.  Defendant has also filed a Counterclaim seeking a declaratory judgment that McKeen's knowledge of the acts or omissions in the Med-Mal Action precludes them from coverage for the Utterback Action.  The parties then filed cross-motions for summary judgment, and Defendant also filed a motion for judicial notice.

## III. LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  A party must support its assertions by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits

5

> or declarations, stipulations (including those made for purposes of the
> motion only), admissions, interrogatory answers, or other materials;
> or;
>
> (B) showing that the materials cited do not establish the absence or
> presence of a genuine dispute, or that an adverse party cannot
> produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). "The court need consider only the cited materials, but it may consider other

materials in the record." Fed. R. Civ. P. 56(c)(3).

The moving party bears the initial burden of demonstrating the absence of any genuine

dispute as to a material fact, and all inferences should be made in favor of the nonmoving party.

*Celotex*, 477 U.S. at 323. The moving party discharges its burden by "'showing'—that is, pointing

out to the district court—that there is an absence of evidence to support the nonmoving party's

case." *Horton v. Potter*, 369 F.3d 906, 909 (6th Cir. 2004) (citing *Celotex*, 477 U.S. at 325)).

Once the moving party has met its initial burden, the burden then shifts to the nonmoving

party, who "must do more than simply show that there is some metaphysical doubt as to the material

facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "[T]he mere

existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient

[to defeat a motion for summary judgment]; there must be evidence on which the jury could

reasonably find for the [nonmoving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252

(1986).

## IV. ANALYSIS

### A. JUDICIAL NOTICE

Defendant requests that the Court take judicial notice of the following documents pertaining

to the Med-Mal Action that was dismissed by the state trial court: (1) the complaint; (2)

6

supplemental witness lists; (3) May 3, 2004, order regarding motions to strike; (4) June 29, 2004, order granting motion for summary judgment; (5) November 1, 2005, motion to compel depositions; (6) November 18, 2005, hearing transcript; (7) order to compel the plaintiff to identify experts; (8) December 2, 2005, hearing transcript; (9) December 2, 2005, letter, regarding Med-Mal action; (10) December 16, 2005, hearing transcript; (11) order barring the plaintiff from calling expert witnesses; (12) January 3, 2006, order of dismissal; (13) May 2, 2006, opinion and order denying the plaintiff's motion for reconsideration; (14) November 11, 2007, opinion of the Michigan Court of Appeals, affirming the state trial court's dismissal; (15) January 10, 2008, order of the Michigan Court of Appeals, denying the plaintiff's motion for reconsideration; (16) July 15, 2008, order of the Michigan Supreme Court denying the application for leave to appeal the dismissal; and (17) October 27, 2008, order of the Michigan Supreme Court, denying the motion for reconsideration. Defendant also requests that the Court take judicial notice of the complaint filed in the Utterback Action, which is currently pending in the Jackson County Circuit Court.

Pursuant to Fed. R. Civ. P. 201(b), "A judicially noticed fact must be one not subject to reasonable dispute in that it is . . . capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Because the above identified documents are the pleadings, papers, and orders filed in two state court actions, the Court finds that the documents contain facts not subject to reasonable dispute. The accuracy of the documents can be determined by examining the public record of the Med-Mal Action and the Utterback Action. *See, e.g., Lyons v. Stovall*, 188 F.3d 327, 332 n. 3 (6th Cir. 1999) (taking judicial notice of a petitioner's briefs filed in a Michigan appellate court and stating that "it is well-settled that [f]ederal courts may take judicial notice of proceedings in other courts of record") (citations omitted). As such, the Court takes

7

judicial notice of the documents attached to Defendant's motion for judicial notice.

**B. SUMMARY JUDGMENT MOTIONS**

Defendant seeks summary judgment on: (1) whether the Utterback Action falls within the scope of the Policy; (2) Count II of Plaintiffs' Complaint because Michigan does not recognize a tort-based claim for bad faith; and (3) Plaintiffs' request for 12% penalty interest because Defendant denied coverage in good faith. McKeen also seeks summary judgment on whether the Utterback Action falls within the scope of the Policy. In response to McKeen's motion for summary judgment, Defendant has made a request for additional time to conduct discovery pursuant to Fed. R. Civ. P. 56(f) if the Court denies Defendant's motion for summary judgment.[4]

*1. Coverage Scope of the Policy*

Pursuant to Michigan law,[5] the interpretation of an insurance policy and determination of whether the policy language is ambiguous are questions of law. *Klapp v. United Ins. Grp. Agency, Inc.*, 468 Mich. 459, 467–69 (Mich. 2003). When making such a determination:

> The court must give the language contained in the policy its plain and ordinary meaning so that technical and strained constructions are avoided . . . . Where the language of an insurance policy is clear and unambiguous, it must be enforced as written. Courts must be careful not to read an ambiguity into a policy where none exists.

*Century Sur. Co. v. Charron*, 230 Mich. App. 79, 82 (Mich. Ct. App. 1998). The policy language

---

[4] Effective December 1, 2010, the analogous language to Rule 56(f) is found in Rule 56(d).

[5] The Court's jurisdiction over this case is based on diversity jurisdiction. As such, the Court must apply the choice-of-law provisions of the forum state, *i.e.*, Michigan's choice-of-law provisions. *NILAC Int'l Mktg. Grp. v. Ameritech Servs., Inc.*, 362 F.3d 354, 358 (6th Cir. 2004). Applying such provisions, the Court will apply Michigan substantive law because there is neither evidence of a substantial relationship between another state and the Policy nor evidence that Michigan law would conflict with another state's law, of which that state has an interest greater than Michigan. *See Id.*

is ambiguous if it is subject to more than one reasonable interpretation. *Klapp*, 468 Mich. at 467; *Farm Bureau Mut. Ins. Co. of Mich. v. Nikkel*, 460 Mich. 558, 566 (Mich. 1999) ("An insurance contract is ambiguous when its provisions are capable of conflicting interpretations.").

McKeen first argues that the Prior-Knowledge provision is ambiguous, and it should be construed in McKeen's favor. Defendant disputes McKeen's assertions that the Prior-Knowledge provision's language is ambiguous.

In this case, the Prior-Knowledge provision reads: "no such Insured had a basis to believe that any such act or omission, or related act or omission, might reasonably be expected to be the basis of such claim[.]" As to McKeen's argument that the Prior-Knowledge provision is ambiguous, the Court rejects McKeen's argument. A plain reading of the Prior-Knowledge provision proposes one reasonable interpretation. *See Klapp*, 468 Mich. at 467. Prior to being insured by Defendant, McKeen must *not* have knowledge of any conduct or omission that the Insured could *reasonably* expect to result in an adverse action due to the Insured's failure to render legal services. The fact that Defendant defined "Insured," "related act or omission," and "claim," but failed to define "basis" or "reasonably" does not render the Prior-Knowledge provision ambiguous. Under Michigan law, the language in a  provision is not required to be in the best drafted form, but instead be clear and fairly read to mean one interpretation. *See Mich. Twp. Participating Plan v. Pavolich*, 232 Mich. App. 378, 382 (Mich. Ct. App. 1998) ("[I]f a contract, even an inartfully worded or clumsily arranged contract, fairly admits of but one interpretation, it may not be said to be ambiguous or fatally unclear."). Thus, the Court finds that the Prior-Knowledge provision is unambiguous.

McKeen next argues that Brian McKeen did not believe or receive any indication from Utterback that she was dissatisfied with the legal representation by McKeen, and, therefore, had no

9

basis to reasonably expect that Utterback would file a claim against McKeen prior to receipt of her legal malpractice counsel's June 8, 2009, letter. Defendant asserts that McKeen's subjective belief is irrelevant. Defendant also contends that a reasonable insured aware of the undisputed facts of this case would have informed Defendant that an adverse action may result against the insured and thus, notify Defendant of such expected action.

With respect to the parties' dispute over whether McKeen's knowledge regarding their conduct in representing Utterback in the Med-Mal Action would reasonably be expected to result in a lawsuit, the Court finds as a matter of law that McKeen should have reasonably expected a claim to be filed against them. This finding is supported by, among others, two factually similar cases. First, in *Ann Arbor Pub. Schs. v. Diamond State Ins. Co.*, 236 Fed. Appx. 163, 168 (6th Cir. 2007), the Sixth Circuit reviewed a trial court's grant of summary judgment to the defendant insurance company and affirmed the trial court's decision. The Sixth Circuit, reviewing a provision similar to the Prior-Knowledge provision at issue here, found that the plaintiff reasonably could have expected that prior Equal Employment Opportunity Commission charges filed against it by its employees may result in a state claim to be filed at a later date. *Id.* at 167. Because the plaintiff failed to inform the defendant insurance company of these Equal Employment Opportunity Commission charges prior to submitting an application for insurance to the defendant, the defendant's denial of insurance coverage as to the state claim was appropriate. *Id.* at 167.

Second, in *Byrd & Assocs. PLLC v. Evanston Ins. Co.*, 367 Fed. Appx. 550, 551 (5th Cir. 2010), the plaintiff law firm represented a family in a medical malpractice suit. In the medical malpractice suit, the plaintiff law firm failed to comply with a trial court's scheduling order requiring the parties to designate their experts. *Id.* As a result, the trial court dismissed the medical

10

malpractice suit.  *Id.*  The plaintiff law firm appealed the trial court's dismissal, which was reversed.  *Id.*  The state supreme court, however, reversed the appeals court's decision and affirmed the trial court's dismissal.  *Id.*  The plaintiff law firm renewed a professional liability insurance policy with the defendant after these events, but indicated that the plaintiff law firm was unaware of any basis for a claim against it.  *Id.*  The defendant insurance company denied coverage on a malpractice claim later filed against the plaintiff law firm for its representation in the medical malpractice action based on a prior-knowledge provision similar to the one at issue in this case.  *Id.*  The appeals court upheld the trial court's grant of summary judgment in favor of the defendant insurance company.  *Id.* at 553.  The appeals court explained that the plaintiff law firm failed to disclose the trial court's dismissal due to the failure to designate experts and the state supreme court's reinstatement of the medical malpractice action's dismissal in the renewal application.  *Id.*

This case is similar to the above-noted cases.  The parties do not dispute that prior to the inception of the first professional liability policy (April 2, 2008), McKeen knew that the state trial court dismissed the Med-Mal Action as a sanction for not complying with the court's discovery orders; the state trial court denied McKeen's motion for reconsideration; the Michigan Court of Appeals affirmed the state trial court's dismissal; and the Michigan Court of Appeals denied McKeen's reconsideration of its opinion.[6]  Thus, McKeen should have reasonably believed that

---

[6]McKeen's "basis to believe" that their acts or omissions would reasonably be expected to be the basis of a claim is based on the events that occurred prior to April 2, 2008, according to the language in the Policy.  The Policy states that the claim will not be covered if "prior to the date an Insured first becomes an Insured under this Policy or became an Insured under the first policy issued by [Defendant] . . . whichever is earlier, of which this Policy is a renewal or replacement."  Because the Policy is a renewal policy of a prior policy issued on April 2, 2008, and April 2, 2008, is earlier than the date that this Policy was in effect, the events that occurred after this date, such as the Michigan Supreme Court's decisions affirming the Michigan Court of Appeals, are not considered in the Court's analysis.

11

noncompliance with the state trial court's discovery order, dismissal due to such noncompliance, and affirmance of the state trial court's dismissal by the Michigan Court of Appeals may give rise to a claim, which should have been disclosed to Defendant prior to inception of the first professional liability policy.

As to Brian McKeen's attached affidavit, he indicates that he did not believe or reasonably expect that the dismissal of the Med-Mal Action would be the basis of a professional liability claim. The Court finds that Brian McKeen's subjective belief is irrelevant. A reasonable jury would find that Brian McKeen's subjective belief is unreasonable based on the undisputed facts. *See CPA Mut. Ins. Co. of Am. Risk Retention Grp. v. Weiss & Co.*, 2011 NY Slip Op. 18, at *1 (N.Y. App. Div. Jan. 4, 2011) (explaining that the insureds' "subjective belief they were not facing a claim in connection with the fraud committed by their clients . . . would not have been reasonable under the circumstances").

Furthermore, Utterback's statements in her affidavit are immaterial. Her statements that she sought a legal malpractice claim against McKeen after November 11, 2008, fail to have any relevancy to whether a reasonable insured might expect a lawsuit to be filed against him or her at an earlier time based on the undisputed facts. Thus, a reasonable jury would conclude that McKeen was required to disclose the conduct in the Med-Mal Action prior to April 2, 2008—the date that McKeen was first insured by Defendant. *See Matsushita*, 475 U.S. at 587 ("The inquiry is whether the record, as a whole, could lead a rational [jury] to find in favor of the nonmovant."). As such, Defendant's motion for summary judgment is granted on this issue, and McKeen's motion for

summary judgment is denied.[7]

## 2. *Bad-faith Denial of McKeen's Insurance Claim*

The Court will now examine whether Plaintiffs may assert a bad-faith claim for breach of the Policy.   Under Michigan law, whether a plaintiff can maintain a claim for bad-faith breach of an insurance policy depends on whether the duty imposed on Defendant is separate and distinct from the underlying insurance policy.  *Casey v. Auto Owners Ins. Co.*, 273 Mich. App. 388, 401–02 (Mich. Ct. App. 2006); *see also Roberts v. Auto-Owners Ins. Co.*, 422 Mich. 594, 603–04 (Mich. 1985) (holding that tort actions survive in a contractual setting as long as the tort action is based on a breach of duty that is distinct from the contract); *Kewin v. Mass. Mut. Life Ins. Co*., 409 Mich. 401, 422 (Mich. 1980) (determining that tort actions may survive when an insurer breaches a duty that existed "independent of and apart from the contractual undertaking").

Plaintiffs' Count II asserts that Defendant asserted false policy defenses in an attempt to avoid coverage of the Utterback Action.  However, McKeen fails to allege a duty separate and distinct from the Policy for which Defendant breached.  Thus, Defendant is entitled to summary judgment with respect to Plaintiffs' Count II bad-faith claim.

## 3. *Penalty Interest under Mich. Comp. Laws § 500.2006*

The Court now turns to whether Plaintiffs are entitled to penalty interest according to  Mich. Comp. Laws § 500.2006.  Mich. Comp. Laws § 500.2006(1) provides:

> A person must pay on a timely basis to its insured, an individual or entity directly entitled to benefits under its insured's contract of insurance, . . . or, in the alternative, the person must pay to its

---

[7] The Court need not address Defendant's request for additional time to conduct discovery pursuant to Fed. R. Civ. P. 56(d) because the Court granted Defendant summary judgment on this issue and denied McKeen's summary judgment motion.

> insured, an individual or entity directly entitled to benefits under its insured's contract of insurance . . . 12% interest, as provided in [Mich. Comp. Laws § 500.2006(4)], on claims not paid on a timely basis. Failure to pay claims on a timely basis or to pay interest on claims as provided in [Mich. Comp. Laws §  500.2006(4)] is an unfair trade practice unless the claim is reasonably in dispute.

A claim may be reasonably in dispute when the insurer disputes its claim in good faith, did not attempt to delay recovery of the insured's benefits, or acted reasonably in denying the claim. *Fed. Ins. Co. v. Hartford Steam Boiler Inspection & Ins. Co.*, 415 F.3d 487, 500 (6th Cir. 2005).

Here, Plaintiffs produce no facts that Defendant acted in bad-faith in denying McKeen's insurance claim.  As the Court set forth above, McKeen should have reasonably expected that their actions in the Med-Mal Action would result in an adverse action against them.  The Court finds that McKeen's claim was reasonably in dispute at the time Defendant denied coverage.  As such, Defendant is granted summary judgment to the extent that Plaintiffs may not recover penalty interest under Mich. Comp. Laws § 500.2006 against Defendant.[8]

## V. CONCLUSION

Accordingly, for the reasons set forth above, IT IS HEREBY ORDERED that Defendant/Counter-Claimant's motion for judicial notice [dkt 13] is GRANTED.

IT IS FURTHER ORDERED that Defendant/Counter-Claimant's motion for summary judgment [dkt 15] is GRANTED.

IT IS FURTHER ORDERED that Plaintiffs/Counter-Defendants' motion for summary

---

[8] As a final matter before the Court, Defendant filed two pleadings [dkts 23 & 25] with the Court after the motions for summary judgment were fully briefed.  These pleadings contained additional cases for the Court to take into consideration.  In response, McKeen objected to both filings [dkts 24 & 26].  The Court need not address McKeen's objections as the Court's opinion and order does not rely on Defendant's additional pleadings.

14

judgment [dkt 14] is DENIED.

      IT IS FURTHER ORDERED that Count II of Plaintiffs/Counter-Defendants and Plaintiff's Complaint is DISMISSED.

      IT IS SO ORDERED.

                        S/Lawrence P. Zatkoff_____
                        LAWRENCE P. ZATKOFF
                        UNITED STATES DISTRICT JUDGE

Dated:  August 30, 2011

CERTIFICATE OF SERVICE

      The undersigned certifies that a copy of this Order was served upon the attorneys of record by electronic or U.S. mail on August 30, 2011.

                        S/Marie E. Verlinde_____
                        Case Manager
                        (810) 984-3290

15